## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOY DE JESÚS**<br>**Collingswood, NJ 08108** | **CIVIL ACTION NO.** |
| **Plaintiff,** | |
| **v.** | |
| **PENNSYLVANIA REAL ESTATE**<br>**INVESTMENT TRUST (PREIT)**<br>**200 South Broad Street**<br>**Philadelphia, PA 19102** | **JURY TRIAL DEMANDED** |
| **PREIT SERVICES, LLC**<br>**200 South Broad Street**<br>**Philadelphia, PA 19102** | |
| **Defendants.** | |

## COMPLAINT

I.  **INTRODUCTION**

Plaintiff, Joy De Jesús, brings this action against her employers,

Pennsylvania Real Estate Investment Trust ("PREIT") and PREIT Services, LLC

(together "Defendants").  During her employment with Defendants, Ms. De Jesús

has been, and continues to be, discriminated against because of her sex and her

race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §2000e, *et seq.* ("Title VII") and the Civil Rights Act of 1866, as amended,

42 U.S.C. § 1981, *et seq.* ("Section 1981").

II.   **PARTIES**

1.      Plaintiff, Joy De Jesús, is an individual and a citizen of the state of New Jersey.

2.      Plaintiff is female.

3.      Plaintiff is Hispanic.

4.      Defendant, PREIT, is a Pennsylvania business trust with a principal place of business at 200 South Broad Street, Philadelphia, PA 19102.

5.      Defendant, PREIT Services, LLC, is a Delaware corporation with a principal place of business at 200 South Broad Street, Philadelphia, PA 19102.

6.      Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

7.      Defendant, PREIT, controls and directs certain of Defendant, PREIT Services, LLC's day-to-day business operations and personnel decisions.

8.      At all times material hereto, Defendants employed more than fifteen (15) employees.

9.      At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

10.    At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

11.    At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this

matter.

III.    **JURISDICTION AND VENUE**

12.    The causes of action which form the basis of this matter arise under Title VII and Section 1981.

13.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

14.    The District Court has jurisdiction over Count II (Section 1981) pursuant to 28 U.S.C. §1331.

15.    Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

16.    On or about June 1, 2010, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

17.    On or about February 25, 2011, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of this notice (with personal identifying information redacted).

18.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

19.     On or about May 9, 2005, Plaintiff was hired by Defendants as a Development Director.  Since the commencement of her employment, she has reported to Doug Grayson (male, white), Executive Vice President.  Mr. Grayson reports to George Rubin (male, white), Vice Chairman.

20.     At all times material hereto, Plaintiff has performed her duties in a highly competent manner.

21.     At all times material hereto, Defendants have engaged in a pattern and practice of discriminating against female and/or non-white employees, including Plaintiff.  Defendants' conduct includes, but is not limited to, the following:

(a)     Since the commencement of Plaintiff's employment, she has been the only female at the director level reporting to Mr. Grayson;

(b)     Upon information and belief, director-level female and non-white employees have requested promotions to Vice President/Officer positions and have been denied;

(c)     Upon information and belief, over the last approximately five (5) years, substantially more male employees have been promoted into Vice President/Officer positions than female employees;

(d)     Upon information and belief, over the last approximately five (5) years, substantially more white employees have been promoted into Vice President/Officer positions than non-white employees;

(e)     Out of four (4) employees in the Office of the Chairman, the

4

highest level at Defendants, all are white males;

(f)　Out of approximately twenty seven (27) Officers, all are white and approximately six (6) are female; and,

(g)　Out of approximately forty (40) Directors, approximately thirty five (35) are white and less than half are female.

22.　Throughout her employment, Plaintiff has been subjected to sex and race discriminatory comments and conduct in addition to what is referred herein. Defendants' discriminatory conduct includes, but is not limited to, the following:

(a)　Joseph Coradino, President, Defendant PREIT Services, LLC, told a female employee that, because she was good-looking, she did not have to worry about her job;

(b)　Mr. Coradino asked a male employee in reference to a female employee who walked by him, "How would you like to throw it into her";

(c)　Mr. Coradino said that a white female was promoted into a position over a black female who had been handling the responsibilities of the job because the black female was too "exotic-looking" to meet with external business associates;

(d)　Mr. Grayson set up a video camera through his desk that had a direct line of sight to a female subordinate's chair so that he could see her genital area when she sat down;

(e)　Mr. Grayson told a female subordinate that she would make a "great trophy wife";

(f)     Mr. Grayson failed to take any action when a female employee complained that a male business associate had just rubbed her backside;

(g)     Mr. Grayson told a female subordinate that she was wearing "sexy pants";

(h)     Mr. Grayson told a female subordinate that "being social" was part of her job and that she should go to the gym with him like his previous female assistant;

(i)     Mr. Grayson expressed his sexual attraction to a female subordinate;

(j)     Mr. Grayson wrote notes to a female subordinate in which he indicated that he was sexually attracted to her; and,

(k)     Upon Plaintiff's third anniversary of employment, Mr. Grayson told her that she had not really worked for three (3) years because she had spent approximately three (3) months of that time on maternity leave.

(l)     As Plaintiff was preparing to go on maternity leave, Richard Zeigler, Vice President asked her if she was looking forward to her "vacation" and, after she responded that maternity leave was not a vacation, said that, "babies are like potted plants.  You just water them and put them on the windowsill";

(m)     Edward Glickman, President and Chief Operating Officer, Defendant, PREIT, commented about a "strap-on" to a female employee who was known to be gay;

(n)     Bruce Goldman, Executive Vice President and General Counsel, told a female director-level employee whose request for a promotion to Vice President had been denied while her male peers were promoted that she did not need the Vice President title to do her job; and,

(o)     A male Associate said that a female who reported to Mr. Grayson must have gotten her recent promotion because of the "blow jobs" that she was giving Mr. Grayson.

23.     In or about 2006, the Development Department in which Plaintiff worked was split into two (2) groups, one of which was to be headed by Mr. Grayson and the other by Mr. Coradino.  Mr. Cordadino was to supervise the "redevelopment" projects, which were highly visible and viewed as high priority projects within Defendants.

24.     At the time of the split, Mr. Grayson told Plaintiff that she had to choose between working for him or working for Mr. Coradino.

25.     Mr. Grayson also told Plaintiff that she would have a problem working for Mr. Coradino because he was similar to her former supervisor at her previous employer.  Plaintiff had previously told Mr. Grayson that her former supervisor was biased against women.  Mr. Grayson informed Plaintiff that her predecessor, who was also female, had transferred out of Mr. Coradino's department because she found it difficult to work with him.

26.     Based on Mr. Grayson's advice and her concern regarding Mr. Coradino's bias against women, Plaintiff stayed with Mr. Grayson after the departmental split.

27.     At that time, Christopher Mrozinski (male, white), Development Director, was given responsibilities in both Mr. Coradino and Mr. Grayson's groups and jointly reported to both men.

28.     In or about October 2006, Plaintiff received her annual performance review for which she was given an overall rating of "E," meaning that she demonstrated "Exceptional performance; distinguished; capable of higher level assignment."

29.     At Plaintiff's review meeting with Mr. Grayson around that time, he told her that he was recommending her for promotion to Vice President/Officer. Mr. Grayson also told Plaintiff that he was recommending Nate Allison (male, black), Associate Development Director, for promotion to Development Director.

30.     In or about 2007, Mr. Allison was promoted to Development Director.

31.     In or about 2007, Plaintiff learned that she was not promoted to Vice President/Officer.  When she asked Mr. Grayson about the reason for Defendants' failure to promote her, he said that Defendants were not creating additional Vice President/Officer positions because an external consultant had advised Defendants that they were too "top-heavy."

32.     In or about April 2007, Plaintiff went on maternity leave.  She returned from the same in or about July 2007.

33.     In or about late 2007, Mr. Grayson told Plaintiff that he was again recommending that she be promoted to Vice President/Officer.  Plaintiff was not promoted at that time and she was not given a reason for Defendants' failure to

promote her.

34.     In or about late 2008, Mr. Grayson told Plaintiff and Mr. Mrozinski that they were both up for promotion to Vice President/Officer.  Mr. Grayson told Plaintiff that Mr. Rubin was aware that if anyone in the Development Department was to be promoted, it should be her.

35.     Plaintiff was not promoted at that time and she was not given a reason for Defendants' failure to promote her.

36.     In or about late 2008, Mr. Mrozinski began to work exclusively for Mr. Coradino.  At around that time, Plaintiff was assigned to an incomplete project for which Mr. Mrozinski had been responsible and which was less visible than the projects on which he was working on with Mr. Coradino.

37.     In or about 2009, Defendants promoted Mark Wasserman (male, white) to the position of Vice President/Officer of Development.  Unlike Plaintiff, Mr. Wasserman did not have experience in real estate development.

38.     On or about January 11, 2010, Plaintiff sent a memorandum to Mr. Grayson and Judy Baker, Senior Vice President, Human Resources, regarding her upcoming maternity leave for her second child, which was due to start on February 12, 2010.  In her memorandum, Plaintiff reminded Mr. Grayson and Ms. Baker of her continued interest in professional advancement with a promotion to Vice President/Officer.

39.     Plaintiff was on maternity leave from in or about the middle of February 2010 through on or about May 17, 2010.

40.     On or about May 12, 2010, Defendants announced that Mr.

Mrozinski was being promoted to Vice President/Officer.

41.     Plaintiff learned of Mr. Mrozinski's promotion to Vice President/Officer when she received the announcement regarding the same during her maternity leave.  Upon information and belief, the position had not been posted and Plaintiff was not considered for a promotion.

42.     When Plaintiff complained to Mr. Grayson about the fact that Mr. Mrozinski had been promoted over her, he said that, "how compensation and promotions are decided at the company isn't fair and you'll just have to learn to live with it."

43.     Mr. Grayson also told Plaintiff that she should take advantage of her status as a minority female by establishing a certified minority/female-owned business.  He told Plaintiff that that way she could partner with Defendants on projects for which minority/female-owned businesses were favored and, by doing so, she could "prove" her "value" to Defendants.

44.     On June 1, 2010, Plaintiff filed her EEOC Charge regarding the discriminatory conduct to which she had been subjected.

45.     Up to the present time, Plaintiff has not been promoted to the position of Vice President/Officer.  She has not been given a reason for Defendants' failure to promote her into that position.

46.     Plaintiff has not been informed that Defendants have conducted any investigation into her complaints of sex and race discrimination.

47.     Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including the hostile work

environment to which Plaintiff was subjected and Defendants' repeated failure to promote Plaintiff.

48.     Plaintiff's race was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including the hostile work environment to which Plaintiff was subjected and Defendants' repeated failure to promote Plaintiff.

49.     Defendants failed to prevent or address the discriminatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

50.     The discriminatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

51.     As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

52.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights.

53.    The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

## COUNT I - Title VII

54.    Plaintiff incorporates herein by reference paragraphs 1 through 53 above, as if set forth herein in their entirety.

55.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated Title VII.

56.    Said violations were intentional and warrant the imposition of punitive damages.

57.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

58.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

59.    No previous application has been made for the relief requested herein.

## COUNT II – SECTION 1981

60.    Plaintiff incorporates herein by reference paragraphs 1 through 59 above, as if set forth herein in their entirety.

61.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated Section 1981.

62.     Said violations were malicious and/or committed with reckless indifference against Plaintiff and warrant the imposition of punitive damages.

63.     As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has sustained the injuries, damages and losses as set forth herein and has incurred attorneys' fees and costs.

64.     Plaintiff is now suffering, and will continue to suffer, irreparable harm and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

65.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of Section 1981;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(e)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g)     awarding punitive damages to Plaintiff under Title VII;

(h)     awarding punitive damages to Plaintiff under Section 1981;

(i)     awarding Plaintiff such other damages as are appropriate under Title VII and Section 1981;

(j)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(k)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

Dated:   05/23/11          BY:     s/Caren N. Gurmankin
                                   Stephen G. Console (36656)
                                   Laura C. Mattiacci (89643)
                                   Caren N. Gurmankin (205900)
                                   1525 Locust St., 9th Floor
                                   Philadelphia, PA 19102
                                   (215) 545-7676
                                   (215) 545-8211 (fax)

                                   Attorneys for Plaintiff,
                                   Joy De Jesús

# EXHIBIT "1"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | ☐ FEPA<br>X EEOC | 530-2010-02477 |

| STATE OR LOCAL AGENCY: PHRC | | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>Joy De Jesús | HOME TELEPHONE NUMBER *(Include Area Code)*<br>▉ |
|---|---|
| STREET ADDRESS<br>▉ | CITY, STATE AND ZIP<br>Collingswood, NJ 08108 | DATE OF BIRTH<br>▉ |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>PREIT (Pennsylvania Real Estate Investment Trust) | NUMBER OF EMPLOYEES, MEMBERS<br>>15 | TELEPHONE (Include Area Code)<br>(215) 875-0700 |
|---|---|---|
| STREET ADDRESS<br>200 South Broad Street | CITY, STATE AND ZIP<br>Philadelphia, PA 19102-3803 | COUNTY<br>Philadelphia |

| NAME<br>PREIT Services LLC | | |
|---|---|---|
| STREET ADDRESS<br>200 South Broad Street | CITY, STATE AND ZIP<br>Philadelphia, PA 19102-3803 | COUNTY<br>Philadelphia |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>X Race* ☐Color X Sex ☐Religion ☐National Origin<br>☐ Retaliation ☐ Age ☐ Disability ☐Other *(Specify)*<br>*My race is Hispanic | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | *Earliest*          *Latest*<br><br>X Continuing Violation |

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondents on or about May 9, 2005 as a Development Director. Since I started with Respondents, I have reported to Doug Grayson (male, white), Executive Vice President. Mr. Grayson reports to George Rubin (male, white), Vice Chairman. Since the commencement of my employment, I have been the only director-level female direct report of Mr. Grayson's and the only female at the director level or above in the Development Department.

I have consistently demonstrated excellent performance during my employment. I received an overall rating of 4.5 out of 5 on my 2009 performance review, and no less than a 4.5 on each of the individual categories. In 2008, I received an overall rating of 4.0 out of 5 on my performance review. In 2007 and 2006, I received the highest ratings possible, signifying that I had demonstrated "exceptional performance," that my performance was "distinguished" and that I was "capable of higher level assignment."

| X I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | |
| Date: 6/8/2010      Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

**EEOC Charge of Discrimination**
**Page 2 of 6**
**Initials of Charging Party** – JBO

2.      Harm Summary

I believe that Respondents have discriminated against me because of my sex, my pregnancies and my race.  Evidence of discriminatory conduct includes, but is not limited to, the following:

a)      In or about early 2006, the Development Department was split into two (2) groups, "ground-up" development, which involved the development of new shopping centers, and redevelopment, which involved the renovation of existing properties.  Mr. Grayson was responsible for "ground-up" projects, while Joe Coradino, President, Respondent PREIT Services LLC, supervised the "redevelopment" projects.  The redevelopment activities were highly visible and were viewed by Respondents as the most prestigious projects.  It was well-known that those employees who worked with, and reported to, Mr. Coradino (most of whom were male and white), were favored regarding professional advancement within Respondents;

b)      At the time of the split, Mr. Grayson, told me that I would have a problem working for Mr. Coradino because he was similar to my former supervisor at my previous employer.  I had told Mr. Grayson that my former supervisor was biased against women.  Based on Mr. Grayson's advice, I felt that I had no choice but to turn down the opportunity to work for Mr. Coradino, even though it meant losing out on the chance to work on his more prestigious and highly-visible redevelopment projects;

c)      Christopher Mrozinski (male, white), Development Director, who had also been reporting to Mr. Grayson and who had less tenure with Respondents than I, was given responsibilities in both the "ground-up" and redevelopment areas, and reported to both Mr. Coradino and Mr. Grayson;

d)      In or about October 2006, in conjunction with my annual performance review, Mr. Grayson told me that he was recommending me for promotion to Vice President and Nate Allison (male, black), then Associate Development Director, to Development Director;

e)      In or about early 2007, Mr. Allison was promoted to Development Director.  I was not promoted.  When I asked Mr. Grayson for the reason as to why I was not promoted, he told me that Respondents were not creating any additional Officer positions (the status I would attain if I were promoted to a Vice President) because an outside Human Resources consultant had advised Respondents that they were too "top-heavy."  (As described below in further detail and contrary to Mr. Grayson's representation, at that time and continuing up to the present, Respondents have promoted male and white employees into Vice President/Officer level positions while denying the same opportunities to female and non-white employees);

f)      In April 2007, I went on maternity leave with my first child.  I returned from maternity leave in or about July 2007;

g)      In or about late 2007, in conjunction with my annual performance review, Mr. Grayson told me that he was again recommending that I be promoted to a Vice President position.  I was not promoted at that time and I was not given a reason for the same;

**EEOC Charge of Discrimination**
**Page 3 of 6**
**Initials of Charging Party –**

h)   In or about late 2008, Mr. Grayson told Mr. Mrozinski and me that we were both up for promotion to Vice President.  Mr. Grayson told me that Mr. Rubin was aware that if anyone in development was to be promoted, it should be me;

i)   I was not promoted at that time and was not given a reason for the same;

j)   In or about late 2008, Mr. Mrozinski began to work exclusively for Mr. Coradino on his redevelopment projects.  At or around that time, I was assigned a project for which he had been responsible and which was far less prestigious than the ones on which he was working on with Mr. Coradino, as well as the other projects that I was managing at that time;

k)   On January 11, 2010, I sent a memorandum to Judy Baker (female, white), Senior Vice President, Human Resources, regarding my upcoming maternity leave for my second child, due to start on or about February 12, 2010.  In that memorandum, I reminded Ms. Baker of my continued interest for advancement within Respondents, specifically referencing my desire for a promotion to Vice President;

l)   I was on maternity leave from the middle of February 2010 through May 17, 2010;

m)   On or about May 12, 2010, Respondents announced that Mr. Mrozinski was being promoted to Vice President/Officer;

n)   I only learned of Mr. Mrozinski's promotion to Vice President/Officer when I received the announcement regarding the same during the last week of my maternity leave.  The position had not been posted and, upon information and belief, I had not even been considered for the same;

o)   When I complained to Mr. Grayson about the fact that Mr. Mrozinski (who had less tenure with Respondents than I) was promoted and I was not, he responded that, "how compensation and promotions are decided at the company isn't fair and you'll just have to learn to live with it;"

p)   Mr. Grayson also told me that I should take advantage of my status as a minority female by establishing my own certified minority/female-owned business entity and then partnering with Respondents on projects on which minority/female-owned businesses were favored.  Mr. Grayson said that, by doing so, I would "prove" my "value" to Respondents;

q)   Respondents' comments and conduct evidence a bias against females and non-white employees.  Evidence of this includes, but is not limited to, the following:

   (1)   Other director-level female and non-white employees have repeatedly requested promotions to Vice President/Officer positions and have been denied;

   (2)   In or about early 2006, only three (3) employees, all of whom were white males, were promoted to Vice Presidents/Officers;

EEOC Charge of Discrimination
Page 4 of 6
Initials of Charging Party – 〜〜

(3)     In or about early 2007, seven (7) employees director-level and above, only two (2) of whom were female and all of whom were white, were promoted to Vice Presidents/Officers;

(4)     In or about early 2008, Anthony DiLoreto (male, white) was hired into the position of Vice President/Officer;

(5)     In or about late 2008, Respondents promoted Gilly Morse (male, white), Senior Leasing Director, into the position of Vice President to head up a new entity that they created;

(6)     In or about 2009, Vince Vizza (male, white) was hired into the position of Vice President/Officer;

(7)     In or about 2009, two (2) employees director-level and above, one (1) of whom was female and both of whom were white, were promoted;

(8)     As I was preparing to go out on maternity leave, a male Vice President asking me if I was looking forward to the "vacation" and after my response that my maternity leave was not a vacation, said that "babies are like potted plants. You just water them and put them on the windowsill;"

(9)     Mr. Coradino told a female director-level employee that, because she was good-looking, she did not have to worry about her job;

(10)    A male Vice President failed to take any action, or even respond, when he was informed by a female Administrative Assistant that her backside had just been rubbed by a male business associate;

(11)    A male employee commented that a female employee who had been promoted must have gotten the position because of the blow jobs that she was giving her male supervisor;

(12)    Edward Glickman, President and Chief Operating Officer of Respondent PREIT, made a comment to a female director-level employee, who was known to be gay, regarding the use of a "strap-on;"

(13)    As a female employee walked by him, Mr. Coradino asked another male employee, "How would you like to throw it into her?"

(14)    A male Executive Vice President told a female Associate that she would make a "great trophy wife;"

(15)    Mr. Coradino said that a white female was promoted into a position over a black female who had been handling the position's responsibilities because the black female was too "exotic looking" to meet with external business associates; and,

(16)    Bruce Goldman, Executive Vice President and General Counsel, told a female director-level employee whose request for a promotion had been denied repeatedly and without justification while her male peers throughout Respondents were promoted that she did not need the Vice President title to do her job.

**EEOC Charge of Discrimination**
**Page 5 of 6**
**Initials of Charging Party –**

r)    Respondents' demographics evidence a bias against females and non-white employees.  There are a disproportionately low number of women and non-white employees in management positions and in leadership roles.  Evidence of this includes, but is not limited to, the following:

(1)    Out of four (4) employees in the Office of the Chairman, the highest level at Respondents, all are white males;

(2)    Out of twenty seven (27) Officers, all are white and only six (6) are female;

(3)    Out of approximately forty (40) Directors, about thirty five (35) are white and less than half are female;

(4)    Upon information and belief, out of approximately three hundred (300) employees beneath the director level and above the clerical level, approximately two hundred and forty (240) are white and about half are female; and,

(5)    Upon information and belief, out of approximately three hundred (300) clerical-level employees, about two hundred and forty (240) are female and about one hundred and eighty (180) are white.

B.    1.    Respondents' Stated Reasons

a)    Respondents' proffered reason for not promoting me in 2007, that Respondents were advised that they were too "top-heavy," is pretextual, as at that time and since that time, Respondents have repeatedly promoted males and/or white employees;

b)    Respondents have not offered any explanation for their failure to promote me in 2008;

c)    Respondents have not offered any explanation for their failure to promote me in 2009;

d)    Respondents have not offered any explanation as to why Mr. Mrozinski was promoted over me in 2010;

e)    Respondents have not offered any explanation for the hostile work environment based on my sex, my pregnancies and my race to which I have been, and continue to be, subjected; and,

f)    Respondents have not offered any explanation for their pattern and practice of discriminating against female employees and non-white employees.

## EEOC Charge of Discrimination
## Page 6 of 6
## Initials of Charging Party –

C.    1.    Statutes and Basis for Allegations

I believe that Respondents have discriminated against me and subjected me to a hostile work environment based on my sex, my pregnancies and my race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), as set forth herein.

D.    1.    **Class Harm**

**I bring this charge on a class basis as a result of the pattern and practice of sex discrimination and race discrimination and a hostile work environment existing at Respondents. Accordingly, I file this as a class charge on behalf of all female employees and all non-white employees at Respondents that have been subjected to discrimination (including being demoted, terminated, not hired and passed over for promotion) and a hostile work environment while employed at Respondent.**

# EXHIBIT "2"

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Joy De Jesus | From: | Philadelphia District Office |
| --- | --- | --- |
| Collingswood, NJ 08108 | | 801 Market Street |
| | | Suite 1300 |
| | | Philadelphia, PA 19107 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 530-2010-02477 | **Legal Unit** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Spencer H. Lewis, Jr.,
**District Director**

2/25/11
*(Date Mailed)*

cc:   Stephen G. Console, Esq., for Charging Party

Thomas J. Barton, Esq., for Respondent

(PREIT Services, LLC)